NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 27, 2021[*]
Decided January 28, 2021

**Before**

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 19-2323

| | |
|---|---|
| GREGORY D. JONES,<br>*Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Central District of Illinois. |
| *v.* | No. 1:17-cv-01344 |
| DUSTIN BAYLER and MICHAEL<br>MELVIN,<br>*Defendants-Appellees*. | Eric I. Long,<br>*Magistrate Judge*. |

**O R D E R**

Gregory Jones, an inmate at the Pontiac Correctional Center in Illinois, appeals the dismissal of this suit under 42 U.S.C. § 1983. The district court dismissed the suit for failure to exhaust administrative remedies. Jones had filed "emergency" grievances, alleging that he feared an officer would harm him because he was assisting with an investigation into whether another guard had murdered a prisoner. When the warden replied that the grievances were not emergencies, Jones appealed to the prison's

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Administrative Review Board, which told him to use the non-emergency process. In *Williams v. Wexford Health Sources, Inc.*, 957 F.3d 828, 835 (7th Cir. 2020), we ruled that, before Apri1 1, 2017, when Pontiac's rules did not require resort to the standard process for rejected "emergency" grievances, the prison could not require an inmate to do so in order to exhaust. Because Jones filed and appealed two grievances before April 1, 2017, under *Williams* he exhausted his claim against the officer. So, we reverse in part, but otherwise we affirm.

Jones describes seven grievances, but he focuses on the first three. He filed the first as an "emergency" in March 2016, describing a "threatening stare" from Dustin Bayler, a corrections officer. An inmate may file a grievance as an "emergency" directly with the warden and bypass two steps of the standard grievance process, the counselor and grievance officer. *Williams,* 957 F.3d at 832. The warden said that this grievance was not an emergency and told Jones to use the standard process, which he did not pursue. He also did not appeal the warden's "no emergency" decision to the board.

Jones's next two grievances also came before April 1, 2017. He filed his second in May 2016 and labeled it an emergency. He wrote that he feared "that [his] life [was] in danger here at Pontiac." He elaborated that Bayler and another officer retaliated against him for cooperating with the murder investigation by housing him with a prisoner who they knew wanted to hurt him. Again, the warden said that it was not an emergency and repeated that Jones should use the standard process. This time, Jones appealed the warden's decision to the prison's Administrative Review Board. The Board's response was materially identical to its response to the inmate in *Williams* (who was also from Pontiac): "[I]t checked boxes on a form indicating that [Jones] had not satisfied the requirements of the *standard* procedure, telling him that he was required to provide responses from his counselor, the Grievance Officer, and the [warden]." *Id.* at 831. In the third grievance, filed March 2017, Jones asserted more retaliation by Bayler: The officer strip searched him, taunting that he would "strip search [Jones] every chance he gets." The warden's response was identical to that of the second grievance; Jones appealed to the Board, and it again told him to use the standard process.

Jones filed his remaining four grievances after April 1, 2017. On that date, the prison changed its administrative-exhaustion rules to require that when the warden rules that a grievance is not an emergency, the inmate must use the standard grievance process. 20 Ill. Admin. Code § 504.840(c) (2017); *Williams,* 957 F.3d at 832–33. Jones labeled the remaining four grievances emergencies. But when the warden ruled that they were not emergencies, Jones did not turn to the standard grievance process.

Jones's next step was this suit. He sued under 42 U.S.C. § 1983, alleging that Bayler violated the First Amendment by retaliating against him with planned physical attacks for his cooperation with the murder investigation, asserting, "my life is in danger." As relevant to this appeal, he also alleged that the warden violated the Eighth Amendment by failing to protect him. The defendants moved for summary judgment, arguing that 42 U.S.C. § 1997e(a) barred Jones's suit because he failed to exhaust his administrative remedies by using the standard grievance process. A magistrate judge, presiding by consent, granted the motion.

Under § 1997e(a), an inmate may not sue under § 1983 "until such administrative remedies as are available are exhausted." Citing his grievances from May 2016 and March 2017 (his second and third), Jones argues that he exhausted his available prison remedies for his claims against Bayler and the warden. He observes that in *Williams* we ruled that a prisoner who, before April 1, 2017, filed and appealed unsuccessful "emergency" grievances at Pontiac had exhausted, even though the warden and the Board had told the inmate to use the standard process. We remarked that an update to the Illinois Administrative Code on April 1, 2017—which required prisoners who receive "no emergency" rulings from the warden to use the standard grievance process in order to exhaust—did not exist before the update. Therefore, we concluded, the prisoner's appeal of the "no emergency" ruling to the Board, without resort to the standard process, sufficed for exhaustion. *Williams*, 957 F.3d at 832–33.

Jones is correct that these two grievances (May 2016 and March 2017) exhausted his claim against Bayler. Like the prisoner in *Williams*, Jones appealed to the Board the warden's "no emergency" rulings. And the Board's responses were the same as with the Pontiac-based inmate in *Williams*—use the standard procedure—at a time when the prison's rules did not so require. Just as we ruled in *Williams* that the prison could not enforce a non-existent procedural rule on prisoners, the same is true here. *Id.* at 834. But these two grievances support exhaustion only for Jones's claim against Bayler. The grievances do not mention the warden. And the first grievance, from March 2016, does not help Jones either, because it does not mention the warden, and Jones did not appeal it to the Board. Thus, only as to Bayler, the district court incorrectly entered summary judgment.

The defendants offer two replies, neither of which persuades us. First, they argue the second grievance cannot support exhaustion of the claim against Bayler because it duplicates the first, from March 2016. But even if we assume that the rules bar

duplicative grievances, duplication did not occur here. The first grievance merely accuses Bayler of a "threatening" stare; the second describes how Bayler allegedly put Jones in physical danger because of his cooperation with the murder investigation, offering details that overlap with the complaint. Second, the defendants contend that Jones's assertion of an emergency in each grievance was frivolous. *See Williams*, 957 F.3d at 835. But the record does not disclose why Jones's fears about Bayler's allegedly retaliatory actions (housing him with a hostile cellmate and strip searching him at every chance) were frivolous. Moreover, because the defendants raise this argument for the first time on appeal, the district court is best suited to resolve it. *See Henry v. Hulett*, 969 F.3d 769, 787 (7th Cir. 2020) (en banc) (leaving issues first raised on appeal for district court to address on remand).

Finally, we briefly address the remaining four grievances. Jones submitted them all after April 1, 2017. They are thus subject to the new regulation requiring that Jones resubmit the grievances through the standard grievance procedure, rather than appeal to the Board, after the warden determined that a grievance did not present an emergency. Jones did not do that, so he did not fully exhaust his remedies for those four grievances.

We therefore REVERSE the dismissal of Jones's claim against Bayler with respect to the second and third grievances and REMAND to the district court. We AFFIRM in all other respects.